# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CHRISTLE "CC" DIXON-MORENO,    &ast;

  Plaintiff,    &ast;

    &ast;

v.    &ast;  CIVIL ACTION NO. 1:25-cv-325

    &ast;

CITY OF ORANGE BEACH, et. al. ,    &ast;

    &ast;

  Defendants.    &ast;

## MOTION TO DISMISS

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendants, the City of Orange Beach, Mayor Tony Kennon, Police Chief Steve Brown, City Attorney Jamie Logan, City Clerk Renee Eberly, and City Administrator Bedford Handley (collectively, "Defendants") hereby move to dismiss Plaintiff's complaint on the following grounds:

## STANDARD OF REVIEW

Defendants may assert by motion the defense of "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To decide whether a complaint survives a motion to dismiss, [courts] use a two-step framework." *McCullough v. Finley*, 907 F.3d 1324,

1333 (11th Cir. 2018). "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. The plaintiff "bear[s] the burden of setting forth facts that entitle [him] to relief." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019).

## BACKGROUND

Plaintiff Christle "CC" Dixon-Moreno ("Moreno" or "Plaintiff") is a Mississippi attorney. She is not licensed to practice law in the State of Alabama. *See* Complaint (Doc. 1), ¶ 1. Moreno sued the City of Orange Beach ("the City"), as well as several officers and representatives of the City, complaining that the City has not responded to her public records requests (which are attached as Exhibits A through D to her complaint). She contends that the Defendants' failure to respond to her request violates the Fourteenth Amendment to the United States Constitution, as well as Alabama law. It is unclear from the Complaint whether Moreno seeks to represent just herself, or also other "citizens" and "voters."

The Complaint references an incident ("the incident") occurring on or about September 4, 2024, when someone called 911 to report a naked male striking a female on the balcony of the City-owned Coastal Resources Building. Doc. 1, ¶ 10. Moreno questioned the propriety of the ensuing police investigation, and demanded records from the City pertaining to the investigation. *Id*. ¶ 14(b); Ex. B to Complaint

2

(July 15, 2025 demand letter).

Moreno also contends that Mayor Kennon "routinely uses [Orange Beach Police Department] supervisor vehicles and on-duty officers for personal transport," allegedly violating Alabama ethics laws. *Id.* ¶ 19. She demanded that the City provide her documents pertaining to the use of City police vehicles. *Id.* ¶ 14(c); Ex. C to Complaint (July 21, 2025 demand letter).

Moreno further demanded from the City "payroll and nepotism-related personnel data." *Id.* ¶ 14(d); Ex. D to Complaint (July 21, 2025 demand letter). She contends there may be improper hiring/appointment of family members within the City. *Id.*

Finally, Moreno contends that she was blocked from Mayor Kennon's "official mayoral social media page." *See* Ex. A to Complaint (July 11, 2025 demand letter). She states that after she complained, her Facebook access "was restored approximately 47 hours" later. *Id.*; Complaint (Doc. 1), ¶ 17.

Based on these allegations, Moreno makes two claims under federal law. In "**Count 4 – 42 U.S.C. § 1983 (First Amendment),"** Plaintiff alleges: "Defendants' viewpoint-based blocking of Plaintiff from the Mayor's official Facebook page violated the First Amendment." In "**Count 5 – 42 U.S.C. § 1983 (Procedural Due Process),"** Plaintiff alleges: "Defendants deprived Plaintiff of her state-created right to inspect public records without constitutionally adequate process." Plaintiff seeks "[n]ominal, compensatory, and punitive damages under 42 U.S.C. § 1983" and "[a]ttorney fees and costs under 42 U.S.C. § 1988."

Moreno also attempts to allege claims under Alabama law, including violation of the Alabama Public Records Act (Count 1); Declaratory Judgment (Count 2); Mandamus (Count 3); violation of the Alabama Ethics Act (Count 6); Spoliation (Count 7); and Negligence/Wantonness (Count 8).

## ANALYSIS

### I.    Plaintiff's complaint is an impermissible shotgun pleading that fails to state a claim for relief against each Defendant.

"[A] complaint filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Muhammad v. Dolgencorp, LLC*, No. CV 23-00281-TFM-B, 2024 WL 2950782, at *3 (S.D. Ala. Apr. 16, 2024) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *report and recommendation adopted*, No. 2:23-CV-281-TFM-B, 2024 WL 2947264 (S.D. Ala. June 11, 2024). Each allegation in a complaint "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). "Relatedly, Rule 10(b) mandates that a complaint 'state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances,' and that 'each claim founded on a separate transaction or occurrence . . . be stated in a separate count' to the extent doing so 'would promote clarity.'" *Dolgencorp, LLC*, 2024 WL 2950782, at *3 (citing FED. R. CIV. P. 10(b). These rules "work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, [and so that a] court

4

can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted[.]" *Id.* (*citing Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996)). *See also Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 877 (11th Cir. 2016).

This Court explained that complaints violating these rules are "disparagingly referred to as 'shotgun pleadings.'" *Id.* (*citing Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)). "The Eleventh Circuit has roughly identified four broad categories of shotgun pleadings[, including:] **(4) those that assert 'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.' The unifying characteristic of all shotgun pleadings is that they 'fail ... to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests**.'" *Id.* (emphasis added).

Here, the Complaint lumps all five (5) individual defendants into one group of "Defendants," apparently alleging that the group as a whole is liable for all eight (8) causes of action, with little to no explanation. *See Weiland,* 792 F.3d at 1323 (*citing Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of") and *Ebrahimi v. Huntsville Bd. Of Educ.*, 114 F.3d 162,

5

164 (11th Cir. 1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint' ")).

For example, Count 4 alleges that "Defendants' viewpoint-based blocking of Plaintiff from the Mayor's official Facebook page violated the First Amendment." Does Moreno contend that all five (5) defendants – the Mayor, the City Attorney, the City Clerk, the City Administrator, and the Chief of Police – blocked her from the Mayor's Facebook account? Or consider Count 5, which alleges that "Defendants" deprived plaintiff of her right to inspect public records "without constitutionally adequate process." Does plaintiff allege that all five (5) Defendants have a duty to produce these records?

As another example, the Complaint contains scant allegations against Defendant Handley, the City Administrator. The Complaint mentions Handley *once*, in paragraph 7: "Defendant Bedford 'Ford' Handley is City Administrator & Finance Director. It is alleged, though unverified and to be proven through discovery, that an OBPD supervisor notified him of the September 4, 2024 incident, obligating him to preserve evidence." The Complaint *never mentions him again*, instead lumping all "Defendants" together as liable under each and every listed cause of action. One wonders, for example, what Handley being notified of the incident has to do with someone else blocking Moreno from the Mayor's Facebook account as alleged in Count 4. The complaint makes no other allegations against Handley, and plaintiff makes no attempt to connect his purported notice of the

6

incident to any of the eight (8) causes of action.[1] This is unacceptable shotgun

pleading, and the Complaint should be dismissed.

## II.    Defendants did not violate the Alabama Public Records Act, thus, the federal and state law claims based on an alleged violation should be dismissed.

Most of the claims asserted in the Complaint, including one of the federal

claims, are valid only if Defendants violated the Alabama Public Records Act ("the

Act"). Count 1 alleges a violation of the Act. Count 2 seeks a declaration that the

Act was violated. Count 3 seeks mandamus relief compelling the City to produce the

requested records. Count 5 claims deprivation of Moreno's procedural due process

rights based on Defendants' failure to provide the records. Count 7 asserts a duty to

preserve the records she requests. And Count 8 alleges Defendants were

negligent/wanton in failing to "comply with disclosure obligations." If Defendants

did not violate the Act, all of the related causes of action fall like dominos.

### A.    The Alabama Legislature authorizes the City of Orange Beach, not Moreno, to establish procedures for public record requests.

Moreno's personal theory of how a public record request works is in direct

contradiction with Alabama law. She contends that she can make a demand for

records in any format of her own choosing, and set her own deadlines for

---

[1] Being notified of an incident is not an act that creates a cause of action. And that is all that is alleged about Handley. If no claims are stated against a defendant, he should be dismissed. *See Mixon v. Corizon, Inc.*, No. 11-00367-WS-C, 2012 WL 671929, at *1 n.2 (S.D. Ala. Feb. 16, 2012) (recommending dismissal of defendants where plaintiff made no allegations against them); *Martinez v. Minnis*, 257 F. Appx. 261, 266-67 (11th Cir. 2007) (district court properly dismissed defendants against whom plaintiff made no allegations).

compliance, and if the City fails to recognize her authority and comply with her procedures, she can file a lawsuit. The Alabama Legislature says otherwise.

The Act provides: "Every resident has a right to inspect and take a copy of any public record of this state, except as otherwise expressly provided by applicable law." ALA. CODE § 36-12-40. A public officer having custody of public records "that a resident has a right to inspect" shall provide, "*on proper request as provided in this article*," a copy of the public record. *Id*. § 36-12-41 (emphasis added).

"On proper request as provided in this article" is a key phrase. The Legislature itself (not Moreno) determines how one must go about requesting public records. Section 36-12-44 provides:

> (a)    A public officer shall respond to a standard request subject to each of the following provisions:
>
> > (1)    The public officer may require the requester to submit his or her request using a standard request form or by following the written procedures for accepting requests for public records established by the public officer. . . .

Section 36-12-44 repeats the requirement for a "proper" request when discussing whether a request is deemed denied by the passage of time: there is no presumption of denial if "[t]he request is not proper or the public officer is not obligated or required to respond as provided in this section." ALA. CODE § 36-12-44(6)a. Thus, if a request is not "proper" from the outset, the City does not have to respond.

The Act further specifically states that a municipality may set up a standardized public records request, which a requestor *must follow*:

> (a)(1)  A resident may request access to a public record by following the written procedures for accepting such requests established by

the public officer having custody of the public record. The written procedures may establish any of the following:

a.     A standard request form for use in submitting a public records request.

b.     A designee, such as a public records coordinator, to whom a public records request shall be addressed.

c.     The permissible method or methods of transmitting a public records request.

d.     Any other policies pertaining to the process for submitting a public records request.

(2) The public officer shall make his or her written procedures concerning public records reasonably available to the public.

(3) ***A public officer shall not be obligated to respond to a public records request that is not made pursuant to the public officer's written procedures***.

ALA. CODE § 36-12-45 (emphasis added).

As contemplated by the Act, the City has "written procedures" concerning public records requests. Section 2-2 of the City of Orange Beach Municipal Code, enacted by Ordinance No. 2022-1418, is entitled, "Public Records." Section 2-2(a) provides: "*Custodian*. The custodian of municipal records shall be the office of the city clerk." Section 2-2(c) provides: "*Requests*. Requests for inspection and/or copying of public records shall be submitted to the city clerk on such forms as may, from time to time, be created for that purpose. All forms shall be available on the city's website or may be obtained from the city clerk's office."

9

**B.     Moreno willfully ignored the City's procedure, and has not made a valid demand for public records.**

Plaintiff sent a series of emails and correspondence to the City demanding records. The City responded each time, directing her to the City's standard request form on its website. *See* **Exhibits 1** through **4** hereto. But over and over again Moreno refused to use the City's written procedures for making a public records request, as required by the Act and City Ordinance 2022-1418. She cannot now complain that her requests were denied – because they have never been properly made from the start.

**1.     In addressing Defendants' Motion to Dismiss, this Court may properly consider the emails and correspondence between Moreno and the Defendants.**

This Court can consider **Exhibits 1** through **4** hereto. Ordinarily, if "matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss must be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). The emails between Moreno and the City, however, are properly before this Court on the City's Motion to Dismiss via the "incorporation by reference" doctrine. As noted by the Eleventh Circuit: "Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine . . . under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Both of these requirements are met.

First, the emails are central to Moreno's claims. She claims that she sent a proper public record request to the City, and the City did not respond nor provide any "lawful exemptions." *See* Complaint (Doc. 1), ¶ 15. For two subsequent public record requests, Moreno claims that "Defendants have neither acknowledged compliance nor produced any responsive documents." *Id*. ¶ 18. Moreno further asserts that Defendants violated the Alabama Public Records Act by failing to produce records "and by ignoring subsequent requests." *Id*. ¶ 23. Almost all of her causes of action depend on these allegations about the City's response to her demands. She attaches to her complaint the letters that she sent to the City, but not the contemporaneous emails to the City attaching those letters, nor the City's responses.

Whether Moreno sent proper public record requests and whether the City responded are critical issues for Moreno's claims in this lawsuit. Thus, the correspondence between Moreno and the City, which show the relevant conduct purportedly giving rise to this lawsuit, is central to her claims. *See Johnson v. City of Atlanta*, 107 F.4th 1292 (11th Cir. 2024) (in excessive force case, police body camera and dashcam footage, though not referenced in complaint, "clearly depict the events that are central to Johnson's claims" and were properly considered on motion for judgment on the pleadings); *Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024) (centrality requirement met where video "show[ed] all the relevant conduct" giving rise to plaintiff's claims).

Second, the emails are not in dispute. "Undisputed" in this context means

that the authenticity of the document is not challenged. *Feldt*, 304 F.3d at 1134. Moreno used the emails to send the four demand letters to the City (attached as exhibits to her complaint), with each letter showing delivery "*Via Email and Certified Mail.*" *See* Complaint (Doc. 1), ¶ 14, Exhibits A through D. The authenticity of the emails cannot be disputed by Moreno.

Accordingly, this Court may consider the attached emails at the Motion to Dismiss stage.

### 2.    Moreno refused to follow the City's procedures.

When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Moreno's allegation that the City ignored her requests is contradicted by the exhibits hereto.

Moreno first emailed Defendants Kennon, Brown, and Logan at 8:21 am on July 15, 2023 with a request for records pertaining to the investigation of the incident. *See* **Exhibit 1**. Defendant Logan responded twenty minutes later at 8:41 am:

> Ms. Moreno, All public records requests must be submitted via the City Clerk and the formal request form which can be found on the City website. I have cc'd our City Clerk, Renee Eberly, who can direct you to the formal request form and provide any assistance you may require.

*Id*.

Minutes later, at 9:04 am, Defendant Eberly, the City Clerk, emailed plaintiff, stating:

> Ms. Moreno, Here is the link to the public records request on the city's
> website. The 'records request form' link will take you to the form. Let
> me know if you run into any issues.
> https://www.orangebeachal.gov/173/Public-Records-Request

*Id.*[2]

Rather than use the link, Moreno responded at 9:12 am, proclaiming that "no
further submission is required" from her. She asked the City to identify any
authority requiring her to use the City's simple website form. *Id.*

The City gave her the answer she requested. Logan responded that
afternoon, quoting ALA. CODE § 36-12-44(a)(1):

> The public officer may require the requester to submit his or her
> request using a standard request form or by following the written
> procedures for accepting requests for public records established by the
> public officer.

*Id.*

Moreno did not respond by following the statute and using the City's
standard request form. Instead, she argued that her request was "reasonable" and
she did not have to follow the statute or the City's procedures. And, rather than
filling out the simple website form used by the City, she threatened to sue the City
and seek attorney fees. *Id.*

Even after being informed by the City of its process for requesting public
records, Moreno twice more demanded additional documents and refused to use the
City's procedures.

On July 21, 2025, Moreno emailed City officials with a demand for documents
pertaining to use of police department vehicles. *See* **Exhibit 3**. The City Clerk

---

[2] The form is attached as **Exhibit 2**.

13

responded, again providing plaintiff with a link to the proper request form:

> Ms. Moreno, Here is the link to the public records request on the city's website. The 'records request form' link will take you to the form. Let me know if you run into any issues.
> https://www.orangebeachal.gov/173/Public-Records-Request

Again, Moreno flatly refused to use the form. *Id*.

On the same day, Moreno emailed City officials with another demand for documents pertaining to related personnel working for the City. *See* **Exhibit 4**.

Again, the City Clerk responded, providing Moreno with a link to the proper request form:

> Ms. Moreno, Apologies, but I will need to consistently refer you to the link to the public records request page on the city's website for proper submission of your request per city policy. The "records request form" link will take you to the form.
> https://www.orangebeachal.gov/173/Public-Records-Request

Moreno again refused to comply. *Id*.

The Act, as cited above, clearly allows a municipality to require compliance with a standard request form or other procedures before responding to a records request. Rather than comply, Moreno attempted to argue with City representatives and write multiple emails and letters demanding records, efforts which likely took more time than just filling out the City's standard online request in the first place.

In two of her email demands (concerning the use of police department vehicles (**Ex. 3**) and related personnel working for the City (**Ex. 4**)), plaintiff argued the following: "The City's insistence on routing all requests through a proprietary form is an unnecessary barrier to access and may constitute a constructive denial of public records under Alabama law. The law affords citizens the right to request

14

records in writing, not solely through internal City forms. *See Blankenship v. City of Hoover*, 590 So. 2d 245 (Ala. 1991)." This argument fails for three reasons.

First, *Blankenship* actually stands for the proposition that a City **can** require someone to fill out a standard form when requesting documents. The Alabama Supreme Court agreed with the trial court's holding that the city **could require** persons requesting public records to fill out a form asking why a person is seeking public records, so long as the question is not intended to dissuade people from seeking the records and is not used in the ordinary course as a means to prevent people from having access to such records. *Blankenship*, 590 So. 2d at 250.[3]

Second, there is no indication whatsoever that filling out the City's standard form caused any unnecessary or substantive delays. Moreno demanded records, was immediately told that the City had a standard form, and then she engaged in a campaign of email- and letter-writing and additional demands for documents outside the City's standard process. Delays, if any, resulted from Moreno's own refusal to follow the law.

Third, *Blankenship* (decided in 1991) and other cases cited by plaintiff pre-date relevant portions of the Act. Section 36-12-45, which requires a resident to use a public officer's "standard request form," became effective October 1, 2024. No matter what any case law stated prior to October 1, 2024, on that date, the Alabama Legislature clearly spoke, and allowed a public body to require compliance with its

---

[3] Moreno here is not challenging any part of the City's standard request form. Instead, she contends that she can simply ignore the City's standard request form altogether.

own standard form or procedures.[4]

Subsection (a)(3) of section 36-12-45 specifically states that a public officer

"***shall not* be obligated to respond to a public records request that is not made pursuant to the public officer's written procedures" (emphasis added)**. Thus, the Legislature left no wiggle room for anyone to ignore a city's standard request form or to create her own form and require a public officer to comply with it. Defendants here followed the law, and plaintiff willfully chose not to.

As an example, Moreno set her own deadlines for the City to respond to her request. *See* Complaint, ¶ 15 (plaintiff herself imposed a 5-day deadline for production of the request documents) and ¶ 18 (she later imposed a 10-day deadline for subsequent demands). The Act itself, however, states that a public officer has 10 business days "to acknowledge a proper request," and then 15 business days from the date of acknowledgment to actually respond (by producing documents or denying the request). ALA. CODE § 36-12-44(a). The statutory response times are even longer for "time-intensive requests" (that will take more than eight (8) hours to process). *Id.* § 36-12-44(b). For both a standard request and a time-intensive request, the public officer also can extend the time for a response by written notice to the requestor. *Id.* § 36-12-44 (a) and (b). Plaintiff is not above the law, and cannot create her own deadlines that the City must follow.

---

[4] The preamble to Act 2024-278, which amended the Alabama Public Records Act, states that the 2024 amendments were enacted "***to establish*** procedures for requesting and obtaining public records," and that the amendments "***add*** Section . . . 36-12-45," which did not previously exist. *See* 2024 Alabama Laws Act 2024-278 (S.B. 270) (emphasis added).

16

Note further that the Act only grants rights to a "resident" to inspect and copy public records. *See* ALA. CODE § 36-12-40(a); 36-12-41; 36-12-43(a). A "resident" is defined as an individual "who is permanently domiciled in Alabama with an expectation to remain in Alabama as demonstrated by reasonable proof of residency, such as, but not limited to, an Alabama Driver license or voter registration." ALA. CODE 36-12-43(b)(3). None of plaintiffs' demands for public records ever indicated that she was anything other than an attorney in *Mississippi*, not Alabama. This is just one reason why the Legislature allows public officers to require compliance with their own standard forms, rather than forcing public officers to submit to the whims of any person, resident or not, who crafts her own form of public record request (that may not provide all of the information, like residency, that would entitle that person to the records).

*Blankenship* simply offers Moreno no support.

Moreno also cited *Stone v. Consolidated Publishing*, 404 So. 2d 678 (Ala. 1981) in her emails. *See* **Ex. 1** hereto. She contends that *Stone* stands for the proposition that section 36-12-40, in Moreno's words, "imposes no additional form requirement once a written request [her letter] is received by the custodian of records." **The *Stone* decision never says that**. Whether the request itself was proper under the law was not even an issue in *Stone*.

Even if one were to twist and contort the wording of the *Stone* decision to support Moreno's position that she can ignore and reject the City's standard public records request form, *Stone* was decided in 1981 – ***forty-three (43) years*** before the

17

Legislature enacted § 36-12-45, specifically stating that a public officer "shall not be obligated to respond to a public records request that is not made pursuant to the public officer's written procedures."  Plaintiff's reliance on *Stone* is seriously misplaced.

III.  <u>**Moreno's claims are not ripe for adjudication.**</u>

Moreno's claims are not ripe. As stated by this Court:

" 'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' " *Gunn v. Minton*, 568 U.S. 251, 256, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). "Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013) (quotation omitted). Ripeness principles "originate[ ] from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (quotation omitted).

To determine whether a claim is ripe for judicial review, courts "consider both 'the fitness of the issues for judicial decision' and 'the hardship of withholding court consideration.' " *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003)). In the administrative context, courts consider: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998).

**Generally, "[a] claim is not ripe for adjudication if it rests upon**

> contingent future events that may not occur as anticipated, or
> indeed may not occur at all." *Texas v. United States*, 523 U.S. 296,
> 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quotation omitted).
> Ripeness is a "justiciability doctrine designed to prevent the courts,
> through avoidance of premature adjudication, from entangling
> themselves in abstract disagreements over administrative policies."
> *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d
> 1349, 1356 (11th Cir. 2013) (quotation omitted). The ripeness of a
> claim is a legal question. *Id.*

*Mobile Baykeeper, Inc. v. Alabama Power Co.,* No. CV 22-00382-KD-B, 2023 WL

7458847, at *9 (S.D. Ala. Sept. 30, 2023) (emphasis added).

Here, Moreno's claims, under the different causes of action, are premised

upon "Defendants" denying her public records request. But Defendants have never

denied anything. Instead, Moreno from the start has never made a request, as

explained above.

Once Moreno makes a proper request – which has not occurred – that is not

the end of the story. The "right" to public records is not unlimited. Section 36-12-40

of the Act specifically addresses "exceptions." For example, exempted from public

disclosures are "any other records relating to, or having an impact upon, the

security or safety of persons, structures, facilities, or other infrastructures . . . the

public disclosure of which could reasonably be expected to be detrimental to the

public safety or welfare, and records the disclosure of which would otherwise be

detrimental to the best interests of the public." *See* ALA. CODE § 36-12-40. The Act

further provides that a public officer "shall not be obligated to respond to a public

records request that is vague, ambiguous, overly broad, or unreasonable in scope."

*See* ALA. CODE § 36-12-44(c).  Subsection (e) further states that a public officer

"shall not be required to respond to requests that seek information or other materials that are not public records." *See* ALA. CODE § 36-12-44(e).  And subsection (f) further states that a public officer may "request reasonable evidence to establish proof of residency." *See* ALA. CODE § 36-12-44(f). *See also Stone v. Consolidated Publishing Co.*, 404 So. 2d 678, 681 (Ala. 1981) ("Recorded information received by a public officer in confidence, sensitive personnel records, pending criminal investigations, and records the disclosure of which would be detrimental to the best interests of the public are some of the areas which may not be subject to public disclosure"); Attorney General Opinion 2016-049 (Aug. 9, 2016) (discussing exceptions).

In addition, once a proper request is actually made, *then* a public officer has to consider all of these issues. That public officer may be the city clerk, as custodian of records, who generally "has the authority to regulate the manner in which the records are inspect and to set reasonable limitations upon access to preserve the integrity of the records." *See* Alabama Attorney General Opinion 2013-046 (May 6, 2013). *See also* City of Orange Beach Ordinance No. 2022-1418, Sec. 2-2(a) (city clerk is the custodian of municipal records). A public officer has to actually make these decisions as to what is a public record that should be produced – *once a lawful request has been made*. The parties have not reached that decision, because no proper request was ever made, and that decision will have to take place before any records are produced. Moreno's claim that her request was "denied" simply is not true and is not ripe for adjudication at this time.

20

For the above reasons, Count 1, Count 2, Count 3, Count 5, Count 7 and Count 8 are due to be dismissed as a matter of law.

## IV.  Moreno has no private cause of action under the Alabama Code of Ethics, and, therefore, Count 6 is due to be dismissed.

Count 6 alleges that Defendant Kennon used public resources for personal gain, in violation of section 36-25-5(a) of the Alabama Code of Ethics. But Moreno has no private cause of action for violation of the Code of Ethics.

"One claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *Blockbuster v. White*, 819 So. 2d 43, 44 (Ala. 2001) (*quoting American Auto. Ins. Co. v. McDonald*, 812 So. 2d 309, 311 (Ala. 2001)). Where a statute creates a duty owed to the general public, not to specific individuals, it does not create a private cause of action in favor of individuals. *See C.B. v. Bobo*, 659 So. 2d 98, 102 (Ala. 1995).

A case involving the Alabama Insurance Code is instructive:

One claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute. The Insurance Code explicitly provides in § 27–11–4 that the insurance commissioner has the authority to bring an action against any insurer he believes is violating the Insurance Code. In addition, the regulations promulgated by the Department of Insurance pursuant to the Insurance Code provide that an individual may demand a hearing before the commissioner to requite alleged violations of the Insurance Code. Nothing in the Insurance Code suggests that the Legislature intended to create a private right of action against one who violates § 27–3–27 by selling insurance without a license. Thus, we conclude that McDonald has no private right of action against Enterprise and AAIC for the alleged violation of selling

21

insurance without a license.

*American Auto. Ins. Co. v. McDonald*, 812 So. 2d 309, 312-13 (Ala. 2001) (some

citations omitted).

Like the Insurance Code, the Code of Ethics at issue here states who may

bring an action for its violation:

> The enforcement of this chapter shall be vested in the commission;
> provided, however, nothing in this chapter shall be deemed to limit or
> otherwise prohibit the Attorney General or the district attorney for the
> appropriate jurisdiction from enforcing any provision of this chapter as
> they deem appropriate. In the event the commission, by majority vote,
> finds that any provision of this chapter has been violated, the alleged
> violation and any investigation conducted by the commission shall be
> referred to the district attorney of the appropriate jurisdiction or the
> Attorney General. The commission shall provide any and all
> appropriate assistance to such district attorney or Attorney General.
> Upon the request of such district attorney or the Attorney General, the
> commission may institute, prosecute, or take such other appropriate
> legal action regarding such violations, proceeding therein with all
> rights, privileges, and powers conferred by law upon assistant
> attorneys general.

ALA. CODE § 36-25-27(c). The Code of Ethics does *not* provide that a private citizen

can file a lawsuit.

This is supported by the Alabama Court of Civil Appeals in *Hipps v.*

*Lauderdale Cnty. Bd. of Educ.*, 631 So. 2d 1023, 1027 (Ala. Civ. App. 1993), which

stated: "We know of no cases holding that the Alabama Code of Ethics, ALA.CODE

1975, §§ 36–25–1 through –30, contemplates a citizen bringing a private action

against a public official for a matter falling within the purview of the Code of

Ethics." *Cf. Muhammad v. Bethel-Muhammad*, No. CIV.A. 11-0690-WS-B, 2013 WL

5531395, at *9 (S.D. Ala. Oct. 7, 2013) (no private cause of action exists for violation

of the judicial canon of ethics). Count 6 should be dismissed.

## V.   The claim for wantonness in Count 8 is not viable against these Defendants.

Plaintiff sued the City and the City's Mayor, Attorney, Clerk, Police Chief, and Administrator, each in his or her "official capacity." "[C]laims that are brought against municipal employees in their official capacity are . . . , as a matter of law, claims against the municipality." *Ex parte Gilland*, 274 So. 3d 976, 980 (Ala. 2018) (citing *Morrow v. Caldwell*, 153 So.3d 764, 771 (Ala. 2014)). *See also Dickinson v. City of Huntsville*, 822 So.2d 411, 415 (Ala. 2001) ("[T]o sue the mayor in her official capacity is simply another way of suing the City."). Thus, all of the claims made in this case are against the City itself.

The City cannot be liable for wantonness. Section 11-47-190 of the Alabama Code provides that a city may be liable only for *negligence*, not for other torts (like wantonness) that may give rise to a punitive damages award. *See* ALA. CODE § 11-47-190. Alabama courts have specifically held that § 11-47-190 disallows claims against cities for wantonness. *See Ex parte Labbe*, 156 So. 3d 368, 374 (Ala. 2014) (city "cannot be held liable for wanton or intentional conduct").

The Alabama Code also expressly disallows punitive damages awards against municipalities: "Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof . . . ." ALA. CODE § 6-11-26 (emphasis added).

Accordingly, Count 8 for wantonness should be dismissed.

## VI.  __Plaintiff has no claim for attorney fees__.

Regardless of whether Moreno alleges a cause of action that may authorize an award of attorney fees, she is not acting as an attorney in this case. As stated in paragraph 1 of complaint, she is a "Mississippi-licensed attorney" whose license to practice in Alabama is "pending."[5] Accordingly, she is not licensed to represent anyone in this lawsuit other than herself. *Compare* ALA. CODE § 34-3-19 (no prohibition from "conducting or managing his her own case in any court of this state") with § 34-3-6 ("Only such persons as are regularly licensed have authority to practice law," including appearing "[i]n a representative capacity").[6]

Because she is not representing anyone else in this lawsuit as an attorney, Moreno cannot seek attorney fees. A pro se litigant is not entitled to attorney fees. *See Kay v. Ehrler*, 499 U.S. 432 (1991) (pro se litigant in a Civil Rights lawsuit is not entitled to attorney fees whether or not the litigant is an attorney); *Davis v. Davis*, 317 So. 3d 47, 62 (Ala. Civ. App. 2020) (denying request for an attorney fee because mother in custody suit was not represented by an attorney); *Bryant v. First Tuskegee Bank*, 866 So. 2d 1139, 1143 (Ala. Civ. App. 2002) (in suit over promissory note, "Bryant was representing himself for most of the proceedings and, as a pro se

---

[5] A search on Pacer likewise revealed that she is not licensed to practice in the Southern District of Alabama.

[6] Moreno is not a licensed attorney in Alabama, and cannot file a lawsuit representing someone else as an attorney. *See* ALA. CODE § 34-3-6. If Moreno __is__ attempting to represent others in this lawsuit, such as other "citizens" (*see* ¶ 19 of Complaint) or "voters" (*see* Complaint, Part V. PRAYER FOR RELIEF, E.), no court ever gained jurisdiction of this case because no attorney filed the case, and the Court has "no alternative but to dismiss the action." *See Ex parte Williams*, 89 So. 3d 135, 139 (Ala. 2011). A pleading filed by a nonattorney on behalf of another is a "nullity." *Id*. *See also Franklin v. Max Federal Credit Union*, 168 So. 3d 83 (Ala. Civ. App. 2015) (because action was filed by a nonattorney, trial court did not obtain subject-matter jurisdiction).

24

litigant, he would not have been entitled to such an award"), *abrogated on other grounds, Ex parte Full Circle Distribution, L.L.C.*, 883 So. 2d 638 (Ala. 2003).

Accordingly, any claim for attorney fees in this case should be dismissed.

## CONCLUSION

For the reasons set forth above, all claims against the Defendants should be dismissed.

**s/David F. Walker**
DAVID F. WALKER (WALKD2617)
david@gallowayllp.com
MELISSA P. HUNTER   (HUNTM3367)
mhunter@gallowayllp.com
GALLOWAY, WETTERMARK
    & RUTENS, LLP
Post Office Box 16629
Mobile, Alabama  36616-0629
PH: (251)476-4493
FX: (251)479-5566
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of August 2025, I served a true and correct copy of the above instrument via U.S. Mail, properly addressed and postage prepaid to:

Christle Dixon-Moreno
P.O. Box 1614
Orange Beach, AL 36561

**s/David F. Walker**