IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ALABAMA


CHRISTLE "C.C." DIXON-MORENO,

*Plaintiff,*

v                                                   **CIVIL ACTION NO. 1:25-00325-JB-B**

CITY OF ORANGE BEACH, ALABAMA, et al.,
*Defendants.*

## EMERGENCY MOTION TO EXPEDITE, FOR PRESERVATION,

## AND FOR IN CAMERA REVIEW

   *COMES NOW* the Plaintiff, Christle "C.C." Dixon-Moreno, and moves on an emergency basis for an order expediting consideration of the issues identified below, entering targeted preservation measures, and directing immediate in camera review of the September 2, 2024 body-camera footage and related records. This motion is necessary to prevent irreparable harm, to preserve evidence, and to ensure timely judicial oversight over records whose continued withholding harms Plaintiff, and the public.

### BACKGROUND AND PROCEDURAL POSTURE

   I.    On September 2, 2024, Orange Beach police responded to a domestic-violence incident at the City Coastal Resources building. Body-camera footage and other records were created.

   II.   On July 15, 2025, Plaintiff submitted a written request for the footage and related records. On July 21, 2025, Plaintiff submitted additional written requests for other categories of records.

   III.  City officials directed Plaintiff to use an internal request form rather than processing the substantively complete written requests, and no records were produced.

   IV.   On August 8, 2025, Defendants filed a Motion to Dismiss. On August 21, 2025, Plaintiff filed a Response in Opposition, and a Supplemental Brief. Defendants filed a Reply on August 26, 2025.

   V.    On August 26, 2025, the municipal election concluded. Mayor Tony Kennon won re-election. Based on timing, and the City's prior handling of Plaintiff's requests, Plaintiff

credibly fears that any internal review will be closed, or narrowly characterized, to foreclose disclosure permanently.

VI.    Plaintiff previously filed a request for expedited consideration. Given post-election developments, Plaintiff now seeks emergency relief, including a short, realistic schedule, preservation safeguards, and in camera inspection.

## LEGAL STANDARDS

A.  Court authority to expedite and manage its docket.

Federal courts possess inherent authority to control the disposition of cases on their dockets with economy of time and effort, weighing competing interests and maintaining an even balance. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). District courts enjoy broad discretion to manage scheduling. *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

B.  In-Camera review to test exemptions or privileges.

Trial courts have discretion to conduct in camera inspection to evaluate privilege, exemptions, or confidentiality claims. *United States v. Zolin*, 491 U.S. 554, 571–72 (1989) (discretion to conduct in camera review upon threshold showing); *Miccosukee Tribe of Indians of Fla. v. United States,* 516 F.3d 1235, 1258 (11th Cir. 2008) (recognizing district-court discretion to use in-camera review in resolving privilege/exemption claims.); *Water Works & Sewer Bd. of the City of Talladega v. Consolidated Publ'g, Inc.*, 892 So. 2d 859, 866 n.4 (Ala. 2004) (endorsing in camera inspection in open-records disputes).

C.  Alabama Open-Records principles, post-2024 amendments.

Alabama recognizes a strong presumption of disclosure, with exceptions narrowly construed. *Chambers v. Birmingham News Co.*, 552 So. 2d 854, 856 (Ala. 1989). In 2024, the Legislature enacted Act 2024-278, codified in part at Ala. Code § 36-12-45, which permits written procedures for requests and states that a public officer shall not be obligated to respond to a request not made pursuant to written procedures. Ala. Code § 36-12-45(a)(3). Those procedures must be harmonized with the Act's disclosure mandate, and constitutional principles, not used to defeat access where substantive notice was provided.

D.  Investigative-material context under Alabama law.

Alabama law provides that "law enforcement investigative reports and related investigative material are not public records." Ala. Code § 12-21-3.1(b). But not all law-enforcement records are categorically exempt, and courts distinguish between truly investigative material and routine records that may be subject to disclosure with appropriate redactions. See *Water Works*, 892 So. 2d at 866 n.4; *Something Extra Publ'g, Inc. v. Mack*, 350 So. 3d 663, 669–70 (Ala. 2021).

**ARGUMENT**

I.   **Emergency relief is warranted to prevent irreparable harm and gamesmanship.**
The election is complete, and Defendants have every incentive to close, or re-label, any internal review to justify continued withholding. Once an administrative closure occurs and the records are withheld, delayed judicial review cannot restore the lost opportunity for timely transparency or public accountability. Expedited review, with a short schedule and in camera inspection, prevents prejudice and preserves the Court's ability to provide effective relief. See *Landis*, 299 U.S. at 254; *Clinton*, 520 U.S. at 706.

II.  **Plaintiff's claims are ripe, not moot, and present ongoing injury.**
Defendants' refusal to process substantively complete written requests, coupled with continued withholding, constitutes a functional denial. Emergency in camera review cabins any later attempt to declare materials "investigative" post hoc, which would otherwise convert delay into permanent secrecy.

III. **In-Camera inspection is the least-restrictive tool to resolve exemptions promptly.**
In camera inspection allows the Court to review the actual contents, require targeted redactions if needed, and promptly order production of non-exempt material. This approach is favored where parties assert blanket privilege or exemption claims, or where timing suggests potential misuse of procedures. See *Zolin*, 491 U.S. at 571–72; *Miccosukee,* 516 F.3d at 1258; *Water Works*, 892 So. 2d at 866 n.4.

IV.  **The 2024 procedures provision cannot be weaponized to defeat substantive access.**
Section 36-12-45(a)(3) permits written procedures and provides that a public officer shall not be obligated to respond to a request not made pursuant to those procedures. But Alabama Courts have long construed the Act in favor of disclosure, with exceptions narrowly applied. *Chambers*, 552 So. 2d at 856. Where a requester has provided substantively complete notice, rigid insistence on a preferred form should not be used to extinguish the right of access. At minimum, in camera review ensures any legitimate concerns are addressed through narrow tailoring instead of categorical refusal.

V.   **The investigative-material privilege must be construed narrowly, on a record, not by label.**
Alabama's investigative-materials statute does not automatically render every law-enforcement record undisclosable. See Ala. Code § 12-21-3.1(b). Courts differentiate truly investigative content from routine records and may compel production of non-exempt portions with targeted redactions after in camera inspection. See *Water Works & Sewer Bd. of the City of Talladega v. Consol. Publ'g, Inc.*, 892 So. 2d 859, 866 & n.4 (Ala. 2004); *Allen v. Barksdale*, 32 So. 3d 1264, 1272–74 (Ala. 2009). And while *Something Extra Publ'g, Inc. v. Mack*, 350 So. 3d 663, 669–70 (Ala. 2021), reads the phrase "related investigative material" broadly, it does not bar courts from using in camera review and ordering disclosure

of non-investigative portions with appropriate redactions. Here, the City should be required to submit the footage and related items for in camera review so the Court can make that determination based on the content, not on post-hoc characterizations.

## VI.    Preservation measures are necessary to protect the Court's jurisdiction and the evidentiary record.

Courts have inherent authority to order preservation where there is a significant risk of loss or destruction. See, e.g., *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135–39 (2004). Courts also recognize that the duty to preserve arises when litigation is reasonably anticipated, and that failure to preserve can warrant sanctions. See *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217–18 (S.D.N.Y. 2003). Targeted preservation obligations, including body-camera source files, metadata, CAD logs, dispatch audio, and internal communications, are appropriate here.

## VII.    Defendants' other threshold arguments do not justify delay or dismissal.

Shotgun-pleading rhetoric, disputes over who blocked whose social-media comments, and arguments over attorney's fees for pro se litigants do not bear on whether the Court should promptly review the records in camera. On the social-media issue, the Supreme Court's recent decision explains when an official's social-media activity constitutes state action. See *Lindke v. Freed*, 144 S. Ct. 756, 762–66 (2024). Those merits issues can proceed on an orderly track. The urgent question now is preventing manipulation, and ensuring the Court can review the materials promptly.

## REQUESTED RELIEF

WHEREFORE, premises considered Plaintiff respectfully requests that the Court enter an order providing the following emergency relief:

A.  Expedite consideration of this motion and set a prompt hearing if the Court finds it helpful;
B.  Consider the Plaintiff's Exhibit A 28 U.S.C. § 1746 Declaration in light of the circumstances and pleadings;
C.  Direct Defendants to deliver to chambers, under seal, within 48 hours, for in camera inspection:

1.  all body-camera video and audio associated with the September 2, 2024 response,
2.  any supplemental recordings,
3.  the complete incident report, CAD logs, and dispatch audio,
4.  any photographs or digital media collected at the scene,
5.  applicable policies in effect on September 2, 2024 concerning domestic-violence response and body-camera use, and,
6.  a log describing with specificity any withheld portions, and the asserted basis;

D.  Enter a targeted preservation order requiring Defendants and their agents to preserve all related materials, including source files, metadata, server logs, incident reports, CAD logs, dispatch audio, photographs, digital media, and internal communications, pending further order;

E.  Enter a temporary protective arrangement so materials submitted for in-camera inspection are not disseminated until the Court rules, without prejudice to prompt release of any non-exempt portions; and

F.  Grant such other, and further, relief as the Court deems just and proper.

**Respectfully submitted on this, the 27th day of August, 2025**

**Christle "C.C." Dixon-Moreno, Esq.**

Mississippi Bar No. 105675

(reciprocal admission pending in Alabama)

P.O. Box 1614

Orange Beach, AL 36561

601-203-0911

cc@morenolawms.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2025, I served a true and correct copy to the Defendant of the above instrument via PACER/ECF.

**Christle "C.C." Dixon-Moreno, Esq.**

# EXHIBIT A

**28 U.S.C. § 1746 Declaration**

I, Christle "C.C." Dixon-Moreno, declare under penalty of perjury

1. I am the Plaintiff.

2. On Sept. 2, 2024, OBPD responded to a domestic-violence incident at the City of Orange Beach Coastal Resources building; body-camera footage and related records were created.

3. On July 15, 2025, and July 21, 2025, I submitted written requests for those records. The City directed me to use an internal form; no records have been produced.

4. On Aug. 26, 2025, the municipal election concluded; based on timing and past handling, I credibly fear an internal administrative closure or re-labeling to foreclose disclosure.

5. Without prompt in camera review and preservation measures, I will suffer irreparable harm because delayed review cannot restore lost transparency or evidence.

Sworn and executed on this, the 27th day of August, 2025.

_____

**Christle "C.C." Dixon-Moreno, Esq.**