IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA


CHRISTLE D. MORENO,            *
        Plaintiff,            *   25-cv-325
                              *   September 2, 2025
vs.                           *   Mobile, Alabama
                              *   1:36 p.m.
CITY OF ORANGE BEACH          *
ALABAMA, et al.,              *
        Defendants.           *
**************************

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE

<u>FOR THE PLAINTIFF</u>:

MS. CHRISTLE D. MORENO, ESQ.
Pro se
5267 Old Highway 11
Suite B
Hattisburg, MS 39402
601-203-0911

MR. DENNIS D. GREEN, JR., ESQ.
P O Box 146
Gulf Breeze, FL 32562
470-774-1288

<u>FOR THE DEFENDANTS</u>:

MR. ANDREW J. RUTENS, ESQ.
Galloway Wettermark & Rutens
P O Box 16629
Mobile, AL 36616-0629
251-476-4493

MR. DAVID F. WALKER, ESQ.
Galloway, Wettermark & Rutens
P O Box 16629
Mobile, AL 36616
251-476-4493

COURTROOM DEPUTY: MS. MELANIE PAULK

COURT REPORTER: CHERYL K. POWELL, CCR, RPR, FCRR

Proceedings recorded by OFFICIAL COURT REPORTER, Qualified pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies and Procedures Vol. VI, Chapter III, D.2. Transcript produced by computerized stenotype.

*CHERYL K. POWELL, CCR, RPR, FCRR*
Federal Official Court Reporter
155 St. Joseph Street
Mobile, AL 36602
251-690-3003/cheryl_powell@alsd.uscourts.gov

**P R O C E E D I N G S**

(In open court.)

COURTROOM DEPUTY:  Case set for a motion hearing in Civil Action 25-325, Christle Moreno versus Orange Beach Alabama, et al.

Is the plaintiff ready to proceed?

MR. GREEN:  We are.

COURTROOM DEPUTY:  Defendant ready to proceed?

MR. WALKER:  Yes.

THE COURT:  All right.  Well, everybody, before we get started, a couple of ground rules for those of you who have not been in here before.  When we don't have a jury, I want to just make sure that we have a good record.  So I would like you to remain seated and just speak into the microphone.  That's a little weird for federal court, but I want to make sure we have a good record.  If you need to stand, you're welcome to, but you're going to need to use the podium.

Okay.  All right.  Well, I think we have several motions.  I set them all to be heard.  I think the first -- why don't we take them in order -- that's the motion to dismiss.

Mr. Walker?

MR. WALKER:  Yes, Your Honor.

We filed a motion to dismiss on several grounds, the first of which is that this is a shotgun pleading.  As I'm sure you're aware, there are four different types of those

pleadings.  One is where a complaint asserts multiple claims against multiple defendants but does not specify which defendants are responsible for which acts or omissions.

This case has eight causes of action.  All of the defendants are in every cause of action.  In each cause of action, it says defendants, in the plural lumped in together, are liable for that claim.  For that reason, it's a shotgun pleading.

I'll give you one specific example.  One of the named defendants is the city administrator, Ford Handley.  He's mentioned one time in Paragraph 7 where it says, it is alleged, though unverified and to be proven through discovery, that an Orange Beach Police Department supervisor notified him of the September 4th, 2024 incident obligating him to preserve evidence.  It never mentions him again.  It doesn't say what Ford did that was wrong that was worthy of being sued.

As an example, Count Four -- are they really alleging that Ford Handley blocked the plaintiff from the mayor's Facebook site?  Who knows because the complaint says nothing else about him.  That's how the entire complaint is structured.

And this argument we're making at the outset, it's not -- this isn't gamesmanship.  They're making constitutional allegations here.  You could have defenses like qualified immunity that may be applicable.  It's hard to know what to argue when they're not saying who did what in the complaint.

I understand that typically in this situation, it's not a dismissal; it's a -- the Court -- if the Court were to agree with me, they would get one shot to amend the complaint -- and I understand that -- if, of course, it's -- the complaint is not dismissed on other grounds.  But that's the first argument we've made.

THE COURT:  Okay.  Well, let's stop there for a minute.

So, Mr. Green, you weren't counsel when the complaint was filed; you're counsel now.  Have you had an opportunity to review the complaint?

MR. GREEN:  I have.

What I find interesting, Your Honor, is that if I were to seek, let's say, body cam footage from the sheriff's office, Baldwin County Sheriff's Office, I could go to the record custodian for Baldwin County Sheriff's Office.  I don't go to the county clerk and do this public records request.

So, here, we have a layperson who is seeking certain public records, documents, and doesn't really know exactly how to go and get them.  Hey; I'm trying to go seek this body cam footage from the police department.  And instead of getting assistance with that and helping a citizen, you know, fulfilling that public records request, what do we get?  We get complete obstruction.  So we get obstruction from the clerk; we get obstruction from, you know, the police department, on down

the line.

You know, and then they rely on -- they being the city clerk is then relying on this form that must be completed. And I think there's some issues there, too. You know, it's pretty vague and ambiguous on its face. The Act itself is not -- that the Alabama legislature has passed, right? It says basically if the custodian of record has a written policy, then, you know, that's how you have to go and do it.

So if you look at the City of Orange Beach, their ordinance, it says, request for inspection and/or copy of the public record shall be submitted to the city clerk on such forms as may from time to time be created for that purpose. All forms shall be available to the city website -- on the city's website and may be obtained from the city clerk's office.

So instead of providing all of that information, my client has to file a lawsuit. And then, in the lawsuit response, do they actually provide the ordinance to the citizen.

And, you know, so here we are -- we've had to engage in all this legal action just to be able to get the city clerk or anybody at the city, for that point, to just simply -- well, here's the ordinance and here's how you got to go and get it all filled out.

I would assert that that is a waiver; that by them not

showing the citizen exactly here's how you do it; this is what's required; here's why you have to fill out our form and provide that notice, that essentially they've waived it and then my client's clearly satisfied the substantial compliance.

Hey.  I don't know who's got it at the city. Somebody's got it.  I don't know if it's the city clerk; I don't know if it's the police department; I don't know if it's the city administrator, but somebody's got that body camera, and we would like to have it.

And then, furthermore, I believe it was later asserted that there's some kind of investigative privilege.  I believe --

THE COURT:  Well, before we just get too far out in front, I mean, so far, we've talked about shotgun pleading. The defense contends that the complaint itself is a shotgun pleading.  Mr. Walker identified one of the four types of shotguns in the closet.

I'm going to be honest with you because I'm not ever going to be anything else.  This is I think a clinic in shotgun pleading.  And that has absolutely zero to do with the merits of what your client seeks or is trying to do.  But it's 100 percent procedurally defective as a pleading.

And don't get me wrong.  Ms. Moreno did not come into this court with this pleading.  She went to state court with this pleading and the defendants brought it to this court.  But

this Court has to evaluate it once it's here.  And it's defective.

So, at a minimum, we're talking about I'm going to dismiss the complaint and allow you to refile it because that's what I do.  And a lot of attorneys have difficulty pleading in federal court.  Whatever.  We have rules we follow.

That has nothing to do with most of what you were telling me about the way the city responded to the request.  That's entirely different.  We'll get to that.  But to set the table here in this court, we have to have a pleading that puts them all on notice.

I know some of the other things that they have brought up in their motion to dismiss -- and we'll hear from Mr. Walker on it in a minute, but the fact of the matter is each of these individuals within the city government that was sued was sued in their official capacity and only in their official capacity.

And I think that the defense properly identifies that that's the same as just suing the city.  But, regardless, the specificity is absent in the complaint in terms of what each of these individual people who have been sued did.  And they are entitled to have that.

So as far as the shotgun pleading goes, I think I agree with the defendant.  But there's more.  So let's talk about it and we'll work through it.

So, Mr. Walker, what's next?

*CHERYL K. POWELL, CCR, RPR, FCRR*
Federal Official Court Reporter
155 St. Joseph Street
Mobile, AL 36602
251-690-3003/cheryl_powell@alsd.uscourts.gov

MR. WALKER:  Next is the allegations about the Public Records Act or the Open Records Act in Alabama.

Six of the eight causes of action, including their First Amendment claim, depend upon a violation of that Act.  In other words, she says she's entitled to these records and we refused to give them to her.

If you look at the Act itself -- I'm going to go through some provisions of it -- 36-12-44(a)(1) -- it says, a public officer may require the requester, the plaintiff here, to submit his or her request using a standard request form.  Subsection 44(a)(6) -- it says, there's no presumption that a request has been denied by the city if the request itself is not proper.  Subsection 45(a) -- it says, a resident may request public records, quote, by following the written procedures for accepting such requests established by the public officer.  It goes on to say, those procedures can include a, quote, standard request form, unquote.  Those procedures can also include, quote, the permissible method or methods of transmitting a public records request, unquote.

It then ends in Subsection (a)(3) by saying, a public officer shall not be obligated to respond to a public records request that is not made pursuant to the public officer's written procedures.

So the question here is has she made a public records request at all.  There's no indication in her complaint that

she complied with the Alabama Public Records Act or with the local municipal ordinance.  The city has written procedures concerning public records requests.  Section 2-2 of the Orange Beach Municipal Code, Subsection (c) says, requests for inspection and/or copy in the public records shall be submitted to the city clerk on such forms as may from time to time be created for that purpose.  All forms shall be available on the city's website or may be obtained from the city's clerk's office.

She didn't use the city's website form.  The complaint only shows that she sent some letters to various different people, sometimes the custodian, sometimes the mayor himself.

So from the four corners of the complaint itself, she has not even made a proper request under Alabama law.  And to be absolutely clear on that, we attached to our motion to dismiss the emails where she would send her requests and the city's response.

We think the Court can review that through the incorporation-by-reference doctrine which has two parts.  One, are the documents authentic?  They haven't challenged that. It's her own emails.  Two, are the documents central to the plaintiff's claims?  You've already heard them talk about her requests.  You've already heard them talk about the city's response which is shown in those emails.

Paragraph 15 of her complaint, she says she sent a

records request to the city and the city did not respond to provide any lawful exemptions.  The emails show her requests and the city's responses.  For two subsequent requests, she said the defendants have neither acknowledged compliance nor produced any responsive documents.  The response from the city is in those emails back and forth that we provided to the Court.

She further says in Paragraph 23 that the defendants violated the Public Records Act by failing to produce records and by ignoring subsequent requests.  The responses are in these emails.  These all clearly refer -- all the emails clearly refer to her requests for the documents and the city's response.

And the entire crux of the complaint or at least six of the eight causes of action centers around that.  Did she make a request; did the city deny it.  So for those reasons, we think the Court can look at these emails that we've attached that are her emails and the city's responses.

THE COURT:  Okay.

MR. WALKER:  When you look at those, all of them, the same thing happens.  She makes a request in an email or a letter; the city clerk very kindly says, we have a standard form on our website; here's the link.  Despite what he was saying earlier, that the city didn't tell her how to do it, the very first email, every one, here's the link.  The plaintiff

responds, I'm not using that link; I'm going to sue you instead. And that's what she did.

So just a brief reminder of the statute, 44(a)(1), public officer may require requester to submit his or her request using a standard request form. Clerk did that. 45(a), she could request the records by following the written procedures for accepting such requests which can include a standard request form. The city has one on their website. It was provided to her.

Those procedures can also state the permissible method or methods of transmitting a public records request like through the city's website which they told her. And then you have (a)(3), a public officer shall not be obligated to respond to a records request not made pursuant to the public officer's written procedures. She refuses to follow them.

What she argues in this case in response to our motion to dismiss is not that she followed our procedures or followed Alabama law but that she substantially complied with the city's procedures. That directly contradicts the shall not language I just read to the Court. And if that's her argument, that's not an argument for this Court; that's an argument for the legislature. They just passed that Act last year in 2024.

We're not being hyper technical here in requiring her to follow the city's forms. There's a fairly recent 2021 Alabama Supreme Court case -- I'll just read to you part of it.

It's a concurring opinion by Justice Shaw.  Public records request case where he said, I further note that, as discussed in the main opinion, there was a formal process for requesting records from the Baldwin County Sheriff's Office.  That process was followed in this case -- was not followed in this case but such noncompliance was waived.

We certainly haven't waived it here.

He goes on, if there's a clear process for making an open records request, deviations from that process shall be avoided.  Otherwise, informal, vague, misdirected, or unserious requests to inspect records could render public officials subject to lawsuits seeking declaratory or injunctive relief under the Open Records Act.

There's a real reason to require compliance with the city's standard form.  The city does it for everyone.

That's our argument on that point.

THE COURT:  Okay.  Mr. Green?

MR. GREEN:  I hear what he's saying, but I think it's getting a little twisted.

If a clerk is telling you, citizen, you have to go to this link and fill out this form -- why do I have to do that?  Because I say so.  They never ever once ever provided the ordinance to the citizen.  How is a citizen supposed to know, Your Honor?  So, here, my client was simply doing what she felt was substantially compliant with the law.  And it was only

until there was a response to her lawsuit was she given that information.  And that's our position on that.

THE COURT:  Okay.  Well, if the statute itself says "shall," substantial, you know -- doing something less than actually complying with it isn't satisfactory under the statute, is it?

MR. GREEN:  No, Your Honor.  But I believe they've waived that by saying, you have to fill out this form.  Why do I have to do it?  And they're not providing the foundation for that.  They're not showing this is the law and here's our written policy.

You know, they could simply have a better policy in there that sends out the form and has the ordinance attached to it.  It informs the citizen; it gives them a roadmap; they know how to properly go make a public records request.

THE COURT:  Sure.  Well, I mean, according to Mr. Walker, that's part of the response that your client received.  I don't know.  And I'm not going to decide that based on the complaint that's in front of me.  I'm going to give you a chance to replead it.  And, I mean, we may be in the same position and I need to interpret the Alabama Code and apply it to the facts that are more specifically set out in the complaint.  And I'm happy to do it.  But, I mean, I'm not going to decide that here and I'm not going to give an advisory ruling except to say that that sounds pretty specific, what the

Alabama Code says about compliance with whatever the local records custodian's procedure is.

And so if it's a matter of that's not available to your client, I guess I would expect to see that in the complaint. But I don't -- from the complaint -- I definitely understand where you both are based on all of the filings in this case at this point. But, really, that needs to be in the complaint. And so I'm not going to dismiss the action on that basis.

What else do you have, Mr. Walker?

MR. WALKER: I have a ripeness argument that's along the same lines. I don't know if you want me to go through it. It's the same --

THE COURT: I'm happy to hear it because I'm happy to let you make your record, but I'm going to let them replead the complaint. So it seems like if you -- if you have a ripeness argument, it's either going to be satisfied or not based on an amended complaint. And I would rather take up something more technical like that based on a complaint that I haven't already said I'm going to dismiss because it's technically not compliant.

Okay. Anything else?

MR. WALKER: Understood. I've made the argument in writing and I don't want to waste your time doing it again.

I had some other arguments, but if they're going to be

allowed to replead -- such as violation of the state Ethics Act. I think she had admitted wantonness. But if they're going to replead, I don't think there's any sense in arguing all that right now.

THE COURT: Well, and some of that -- honestly, Mr. Green, I would look at the motion to dismiss and think about that as you're repleading the complaint. I think that, technically, some of their arguments are correct. Like, if, in fact, this is really just a lawsuit against the city, can the city commit wanton conduct under Alabama law? Think about that when you're pleading because that may save an allegation that you don't need to make.

Okay. So with regard to the motion to dismiss itself, I'm going to grant the motion to dismiss and allow you to replead. I'll give you 30 days. You don't have to take 30 days if you don't need it. But -- and the defense will have its obligation to respond with a responsive pleading as provided by the rules within that time based on whenever you file it. But I'm going to give you 30 days to do it. But, again, you don't have to wait 30 days. You can do it tomorrow, next week, this afternoon, whatever pleases the plaintiff. You're the master of the complaint.

Okay. I think there's at least a couple other arguments or a couple other filings. One is a motion for sanctions filed against the defense I think in large part for

filing a motion to dismiss.

MR. GREEN:  Can I have a second with my client, Your Honor?

THE COURT:  You can.

(Discussion off the record.)

MR. GREEN:  Your Honor, we'd withdraw that filing at this time.

THE COURT:  Okay.  I think that's a good decision.

If motion for sanctions was in order for any attorney who filed a motion to dismiss, that would be like an earthquake happening.  I might not complain a lot because we get a lot of motions to dismiss, but yeah.  I mean, just because I do find it's a shotgun pleading, I'm not going to sanction the defense.

There's also a lot of litigation about the motion to continue this hearing.  And it was opposed -- obviously, we're having the hearing at the time that I set.

And I guess I would just offer I guess for the plaintiff's benefit primarily because neither -- I have not had either of you in court before.  The Court sets hearings for the Court's calendar.  But, generally speaking, that's convenient for me.  And I recognize that lawyers have other obligations.

So a lawyer seeking to continue a hearing is not an extraordinary thing.  And sometimes that's a request that is well received; sometimes it's not.  And I think that we just have to be careful choosing what ditch we want to fight in and

whether a motion to continue is the best place to fight it out and aggressively fight it out. Okay. Well, there's that.

I have a general question. And this is just as -- this is -- doesn't relate to the merits and is not a criticism. I'm curious if plaintiff used some kind of AI vehicle to draft the pleadings.

PLAINTIFF MORENO: No, Your Honor. This was --

THE COURT: Okay. Let your lawyer talk.

And, again, this is not being critical. But stylistically, I just have some questions about it. Or I'm curious.

MR. GREEN: I have no knowledge of that, Your Honor. I didn't inquire into that subject area.

THE COURT: Okay. That's fine. I don't have a problem with people who use AI. AI is a tool, right? And between the ability to use tools and having opposable thumbs, that's what kind of separates us from animals. So when we use tools, that's okay. That's a good thing. It's when we don't, like, check our work. I don't have any criticism about that. I have criticism with other people about that but nobody who is involved in this case.

MR. GREEN: Yes, Your Honor.

I think that there was recently a bunch of bar articles at least in Florida where I think it was a plaintiff's counsel that was -- had gotten reprimanded for that. Then I

think there was a federal judge actually that had to retract an opinion.

THE COURT:  Yeah.  There's been a couple.

MR. GREEN:  It's definitely a hot-button issue.  I think we have a CLE in Texas coming up on that, on the use of AI in our pleadings.

THE COURT:  Yeah.  I mean, it's real; it's a thing.  I don't necessarily have a problem with that.  But it's when people don't check and we get some hallucinations -- that's a little crazy, little dangerous.

Okay.  So what else can I do to help you move your case?  I guess I'm putting it back to square one and that's back on you to file.

MR. GREEN:  Well, Your Honor, with respect to the Facebook blocking with the mayor, I guess all that can still be addressed in the amended complaint coming back and then we can --

THE COURT:  Oh, sure.  And that's -- I mean, I'm not striking anything on the merits.  So you're welcome to bring whatever claims you want.

The defendants have told you what they think about them.  They may tell me the same thing when you refile.  But that's -- we're going to start this with a pleading that is compliant.  And, you know, to the extent you didn't know before what the City of Orange Beach thinks is the appropriate

procedure, there's no reason you can't, like, be doing that at the same time, too, to my mind.

MR. GREEN:  Thank you, Your Honor.

THE COURT:  The defense may have a different feeling about that.  But let's try to find a way to get to a resolution that we can all move forward from.  Okay?

So from the defense, anything else?

MR. WALKER:  I don't think so.

THE COURT:  All right.  Well, we're going to enter a docket order granting the motion to dismiss, giving the plaintiff 30 days' leave to file an amended complaint.

The other motions are -- the motion for sanctions is withdrawn and to the extent there's -- I think -- well, wait a minute.  There was something about an emergency motion to preserve evidence.

I think that to the extent that this is in litigation, the city is going to be obligated to preserve evidence at this point.  And we can hear about spoliation if there's spoliation.  But I think they're on notice of what's being sought.

So I'm not inclined to enter any emergency relief unless you can tell me that something is about to be destroyed or the city is not on notice of what you're concerned about.

MR. GREEN:  I agree with you, Your Honor.

THE COURT:  Okay.  Well, then, I'm going to mark that motion as moot based on our hearing today.

Okay.  Well, very good.  We will look to see an amended complaint and responsive pleading from the defense. Thanks.

(The Proceedings were concluded at approximately 2:05 p.m. on September 2, 2025.)

*CHERYL K. POWELL, CCR, RPR, FCRR*
Federal Official Court Reporter
155 St. Joseph Street
Mobile, AL 36602
251-690-3003/cheryl_powell@alsd.uscourts.gov

C E R T I F I C A T E


        I, the undersigned, hereby certify that the foregoing pages contain a true and correct transcript of the aforementioned proceedings as is hereinabove set out, as the same was taken down by me in stenotype and later transcribed utilizing computer-aided transcription.

        This is the 3rd day of September of 2025.

_____

        Cheryl K. Powell, CCR, RPR, FCRR

        Federal Certified Realtime Reporter

*CHERYL K. POWELL, CCR, RPR, FCRR*
Federal Official Court Reporter
155 St. Joseph Street
Mobile, AL 36602
251-690-3003/cheryl_powell@alsd.uscourts.gov