**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CHRISTLE "CC" DIXON-MORENO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. 1:25-cv-00325-JB-B |
| | * | |
| CITY OF ORANGE BEACH; TONY KENNON; and JACK ROBERTSON, | * | |
| | * | |
| | * | |
| Defendants. | * | |

---

**SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF**

## I. NATURE OF THE ACTION

1. This is a civil-rights and public-records action brought by a citizen journalist and taxpayer to obtain access to police records concerning a matter of public concern, and to redress retaliation and viewpoint discrimination directed at Plaintiff because of her protected speech, reporting, criticism, petitioning, and litigation. This pleading supplements the case with events that occurred after the operative pleading, including conduct by City Councilman Jack Robertson connected to the same body-camera footage and controversy already before the Court.

2. Plaintiff submits this Second Amended and Supplemental Complaint under Federal Rules of Civil Procedure 15(a)(2) and 15(d), pursuant to the Court's Order granting leave (Doc. 69). In compliance with Civil Local Rule 15(a), this pleading reproduces the entire pleading as amended and does not incorporate any prior pleading by reference. To avoid shotgun defects, each Count incorporates only the specifically numbered paragraphs identified for that Count.

3. Plaintiff seeks declaratory and injunctive relief under the Alabama Public Records Act, Ala. Code §§ 36-12-40 to 46, and relief under 42 U.S.C. § 1983 for First Amendment retaliation and viewpoint discrimination, as incorporated through the Fourteenth Amendment, including viewpoint-based blocking and comment restriction on official social-media accounts used to conduct City business, and for municipal liability. Restoration of access does not moot Plaintiff's claim for nominal damages.

## II. PARTIES

4. Plaintiff Christle "C.C." Dixon-Moreno is an Alabama resident, citizen journalist, and taxpayer who regularly reports on Orange Beach government and policing to a substantial local audience.

5. Defendant City of Orange Beach is an Alabama municipal corporation and custodian of the records at issue.

6. Defendant Tony Kennon is the Mayor of Orange Beach and is sued in his individual capacity for his personal actions under color of state law.

7. Defendant Jack Robertson is a member of the Orange Beach City Council and is sued in his individual capacity for damages for his personal actions under color of state law and, alternatively and solely for prospective relief, in his official capacity. Robertson maintains continuing control over the account and the authority to impose or remove restrictions on Plaintiff's access to it.

## III. JURISDICTION AND VENUE

8. This Court has federal-question jurisdiction over the claims arising under 42 U.S.C. § 1983. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), and authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in this District because Defendants reside here and the events giving rise to the claims occurred here. 28 U.S.C. § 1391(b).

## IV. STANDING AND RESIDENCY

10. Plaintiff is a resident within Ala. Code § 36-12-43(b)(3), permanently domiciled in Alabama, and is entitled to request and inspect public records under §§ 36-12-40 et seq.

11. Plaintiff is also a citizen journalist who gathers, analyzes, and disseminates news and commentary about City governance, policing, and public integrity to a significant local audience, and she pays local taxes that fund the City and its police department.

## V. GENERAL ALLEGATIONS

12. On or about September 2 through 4, 2024, City police officers responded to a reported incident, recorded as Incident No. 24090105, at the City-owned Coastal Resources Building. The response resulted in no arrest and no criminal charge.

13. Before filing this action, and in and around July 2025, Plaintiff submitted public-records requests to the City seeking body-worn camera, in-car video, CAD, radio, and GPS or AVL records of the September 2024 response and related custodian-identifying records.

14. The 2024 Public Records Act amendments require a public officer to acknowledge a proper standard request within 10 business days and to provide a substantive response fulfilling or denying the request within 15 business days after acknowledgment, subject to the written extensions permitted by Ala. Code § 36-12-44(a)(4). A substantive response denying a request must state the reasons for the denial.

15. On September 3, 2025, at the City's direction and using the City's mandated online portal, Plaintiff re-entered the same public-records requests she had made before filing suit. That portal submission was a continuation of her pre-suit public-records requests, made because the City required requesters to use its portal, and was not an attempt to obtain litigation-relevant material in lieu of civil discovery.

16. Alabama's Act 2023-507, codified at Ala. Code § 36-21-210 et seq., governs disclosure and release of body-worn camera and dashcam recordings and principally permits compelled disclosure to a person whose image or voice appears in the recording or that person's qualifying representative. Plaintiff does not premise her Public Records Act claims on a statutory right to the video itself under that Act; rather, the City's shifting reliance on that Act and on other exemptions is evidence that the City's stated basis for nondisclosure has been inconsistent, and Plaintiff's Public Records Act claims concern the non-video records described below.

17. Plaintiff maintains a contemporaneous body-worn camera thread compiling timestamps, officer identifiers, and audio descriptors corresponding to the September 2024 response.

18. Plaintiff commented on the Mayor's official social-media page or pages about City business. While using those pages to make official announcements, policy statements, and to solicit public input, Mayor Kennon blocked Plaintiff and deleted or restricted critical comments.

19. Following Plaintiff's July 2025 public-records requests, the City characterized the responsive body-worn camera footage as investigative material and invoked exemptions including Ala. Code § 12-21-3.1(b).

20. The September 2024 response resulted in no arrest and no criminal charge, and the alleged victim was not formally interviewed but was contacted only by a brief telephone call several days afterward. On information and belief, the response was handled as a call for service rather than as a criminal investigation: it was not assigned a criminal investigative case, no completed criminal investigation resulted, and the City did not treat the recordings as investigative material until it opened an administrative review on July 17, 2025, after Plaintiff's requests. The requested records were therefore routine documentary records, not material generated by a systematic criminal inquiry.

21. The City's use of investigative status to bar disclosure is arbitrary where, on information and belief, no criminal investigation existed and no specific, articulable harm from disclosure is identified. The City's refusal has operated as a pretext to shield official conduct from public scrutiny.

22. The subject of the alleged misconduct, Mayor Kennon, exercises supervisory authority over the Orange Beach Police Department, the custodian of the footage. Allowing him or his office to influence nondisclosure of records concerning his own conduct presents a conflict of interest and results in unequal enforcement of disclosure rules.

23. The withholding of the records burdens Plaintiff's ability, as a citizen journalist, to gather and report on matters of public concern.

24. On July 17, 2025, after Plaintiff's public-records requests, the City of Orange Beach, not the Police Department, opened its own administrative review and then characterized the September 2024 footage as investigative material.

25. Ala. Code § 12-21-3.1(b) exempts law-enforcement investigative reports and related investigative material. A post-hoc municipal administrative review is not a law-enforcement criminal investigation within the meaning of that statute and cannot retroactively cloak pre-existing records from disclosure.

26. The July 17, 2025 process was a City Hall administrative review, not a criminal investigation by the Orange Beach Police Department. On information and belief, it involved no criminal case number, no assigned criminal investigator, no criminal-investigative report, no witness interviews, no referral for prosecution, and no prosecutorial purpose, and it therefore is not a law-enforcement criminal investigation within the meaning of Ala. Code § 12-21-3.1(b).

27. The City's reliance on a City-initiated administrative review to withhold records concerning the sitting Mayor reflects a disqualifying conflict of interest, rendering continued nondisclosure arbitrary.

28. On September 3, 2025, the City, through City Clerk Renee Eberly, denied access to the requested body-worn and in-car camera footage, metadata, and related CAD radio traffic, citing Ala. Code § 12-21-3.1(b) and *Something Extra Publishing, Inc. v. Mack*, 350 So. 3d 663 (Ala. 2021).

29. The City produced a vehicle inventory list in partial response and denied other categories, including AVL logs and personnel notification lists, citing Ala. Code §§ 36-12-40, 36-12-43, and 36-12-44. These non-video records, including CAD data, the vehicle inventory, AVL logs, and personnel notification lists, are ordinary administrative records and present materially different exemption questions from the body-worn camera footage.

30. The City's categorical denial reflects a municipal policy and custom of treating all body-worn camera recordings as privileged law-enforcement investigative materials, even when generated outside any criminal investigation, and of denying disclosure wholesale.

31. This case is not a garden-variety records request. The nondisclosure benefits the very official concerning whom the records were generated and arises from an internal process initiated only after Plaintiff's requests, creating a conflict of interest that undermines the public purpose of the transparency laws.

32. The requested records are contemporaneous, objective records of the event, not the product of a criminal investigative file, and a later administrative review cannot transform them into protected investigative material.

33. Plaintiff engaged in protected First Amendment activity, including her public-records requests, public reporting, public criticism of City officials, petitioning, and this litigation.

## VI. SUPPLEMENTAL ALLEGATIONS (POST-PLEADING EVENTS)

34. After the operative pleading and the Court's ruling on the motion to dismiss, additional material events occurred concerning the same footage, the same officials, and the same controversy already before the Court.

35. While withholding the body-camera footage from Plaintiff and the public as purportedly exempt, the City permitted members of the City Council to view the same footage. On information and belief, at least one member of the press also viewed the footage, and audio from it has circulated publicly.

36. Three members of the City Council, Ginger Harrelson, Jeff Silvers, and Robert Stuart, later filed an ethics complaint concerning the Council's viewing of the footage and the Mayor's conduct surrounding its handling and potential release, corroborating that the Council viewed the same footage withheld from Plaintiff.

37. On or about June 30, 2026, Councilman Robertson published a public Facebook post addressing City business, the pending dispute, and public statements concerning the controversy, and directed his remarks at Plaintiff by name.

38. In the same public thread, Robertson stated that he had personally seen the disputed body-camera video, stating in substance that he "saw the video" and characterizing its timing, while Plaintiff and the public remained denied access to the same footage. Councilmember Harrelson publicly responded to Robertson concerning the timing of the footage.

39. Robertson further stated that the matter was "going through the court and nothing we can do," invoked advice or direction he attributed to "our attorney," and discussed what "we" and the Council could and could not do concerning the footage and its release.

40. Before Robertson imposed any restriction, commenting on the June 30, 2026 post was open, and Plaintiff and other members of the public participated in the thread. Robertson then imposed the restriction reflected in Facebook's notice that "Jack Robertson limited who can comment on this post," which excluded Plaintiff from continuing to comment on the post while permitting persons within the permitted group, including persons hostile to Plaintiff, to continue commenting.

41. After Plaintiff criticized Robertson's statements and attempted to respond concerning the pending litigation and the Council's handling of the body-camera footage, Robertson blocked Plaintiff from accessing and participating on the Facebook account he used to address constituents regarding City Council business. Before the block, Plaintiff could access the account and participate in its public discussions. After the block, she could no longer access the account, view its public-facing content through her account, comment on its posts, or respond to Robertson's statements concerning her, while persons expressing viewpoints hostile to Plaintiff remained

permitted to participate. The block has since ended; its removal date and circumstances are not presently known to Plaintiff and will be established in discovery. While the block was in effect, Plaintiff was unable to access the account, view its public-facing content through her account, participate in its discussions, or respond to statements concerning her.

42. Robertson personally endorsed and amplified comments attacking Plaintiff's professional reputation, law license, and mental stability, as reflected by the “liked by Author” markers Facebook displayed on those hostile comments, while burdening or excluding the participation of persons who would respond on Plaintiff's behalf or criticize Robertson or the City.

43. Robertson used the account through which he published the June 30, 2026 post in his capacity as an Orange Beach City Councilmember to communicate with constituents about City business, Council actions, the City's pending litigation, the Council's access to City records, and advice received from the City Attorney. On June 18, 2026, before the challenged post, Robertson used his official City of Orange Beach email address to communicate with the news media about the same governmental controversy, including the pending litigation and the ethics complaints concerning the Council's handling of the body-camera footage, further reflecting that he addresses Council business through official City channels and in his governmental capacity. In that post, Robertson purported to speak for the Council by describing what "we" could do, what the Council knew, and instructions he attributed to "our attorney." On information and belief, by established Council practice and usage, Robertson possessed actual authority to communicate on behalf of the Council concerning Council matters through the account. On information and belief, Robertson also possessed exclusive and unreviewable authority to administer the account, to determine who could access and participate in its public discussions, to impose or remove comment restrictions, and to block or unblock users, and no other City officer reviewed or reversed those account-management decisions; Robertson alone possesses the present authority to impose or remove such restrictions on Plaintiff's access.

44. After Plaintiff's protected activity, Plaintiff was blocked or restricted on Mayor Kennon's official mayoral Facebook page, which the Mayor used to conduct City business. On July 11, 2025, Plaintiff sent a formal written demand notifying the Mayor and the City Attorney that she had been blocked and demanding restoration of access; access was thereafter restored.

45. The conduct described in these supplemental allegations occurred after the deadline to amend the pleadings. Within hours of Robertson's June 30, 2026 post, at approximately 11:53 p.m. that night, Plaintiff issued a formal litigation-hold and preservation demand to Robertson and the City Attorney, with other officials copied, and served a signed preservation demand by certified mail on July 1, 2026.

46. The City continues to withhold the requested records from Plaintiff, and Defendants have not disavowed the records and social-media practices described herein. Plaintiff, who continues to report on and petition the City, faces a continuing likelihood of renewed denial of records and of viewpoint-based restriction on official social-media accounts. The page-wide block that Robertson previously imposed on Plaintiff's access to his account has since ended, but Robertson has not disavowed his authority to reimpose it, and Plaintiff continues to wish to view and participate in Robertson's posts and interactive spaces concerning Council business without renewed viewpoint-based exclusion.

47. These supplemental facts arise from the same footage, the same City, the same officials, and the same controversy already before the Court.

## VII. CLAIMS FOR RELIEF

To avoid shotgun pleading, no Count adopts all preceding allegations. Each Count incorporates only the specifically numbered paragraphs listed for that Count, identifies the Defendant or Defendants to whom it applies and the specific conduct at issue, and seeks relief tailored to that Count.

**COUNT I - ALABAMA PUBLIC RECORDS ACT: DECLARATORY RELIEF**
**(Ala. Code §§ 36-12-40 through 36-12-46; 28 U.S.C. §§ 2201 and 2202)**
**Against Defendant City of Orange Beach**

48. Plaintiff incorporates paragraphs 4, 12 through 16, 19 through 21, 24 through 29, and 31 through 32 only.

49. Plaintiff is an Alabama resident entitled to request and inspect public records under Ala. Code § 36-12-40. Before filing this action, Plaintiff submitted public-records requests seeking, among other things, the CAD event and dispatch records, radio-traffic records, AVL or GPS logs, personnel-notification records, and custodian-identifying records associated with the September 2024 police response. Those non-video records were created and maintained in the ordinary course of documenting a call for service, dispatching City personnel, recording vehicle activity, identifying record custodians, and administering City operations.

50. Plaintiff submitted the July 2025 requests in her capacity as an Alabama resident and citizen journalist for purposes of reporting on City government, not to obtain civil discovery. When the City subsequently directed Plaintiff to use its online portal, her September 3, 2025 portal submission repeated and continued those pre-suit requests in the manner required by the City. The requests therefore were not made in lieu of the discovery procedures applicable to this action and are not barred by Ala. Code § 36-12-46.

51. The September 2024 response was handled as a call for service and was not assigned or conducted as a criminal investigation. It resulted in no arrest, criminal charge, criminal investigative case, completed criminal investigation, or referral for prosecution. The City's July 17, 2025 administrative review was initiated after Plaintiff requested the records and was not a criminal investigation conducted by the Orange Beach Police Department. That later administrative review did not retroactively transform the pre-existing CAD, radio-traffic, AVL,

notification, and custodian records into law-enforcement investigative reports or related investigative material under Ala. Code § 12-21-3.1(b).

52. The City has denied and continues to deny Plaintiff access to the requested non-video records based, in whole or in part, on § 12-21-3.1(b). Plaintiff contends that the records are public records subject to disclosure under §§ 36-12-40 through 36-12-45 and that the investigative-material exemption does not apply. An actual and continuing controversy therefore exists concerning the parties' respective rights and obligations.

53. Plaintiff requests a declaration that: (a) her July 2025 requests and the City-directed continuation of those requests through the portal are not barred by § 36-12-46; (b) the requested CAD event and dispatch records, radio-traffic records, AVL or GPS logs, personnel-notification records, and custodian-identifying records are public records under § 36-12-40, subject only to particularized redactions expressly authorized by applicable law; (c) the City's July 17, 2025 administrative review was not a law-enforcement criminal investigation and did not bring those records within § 12-21-3.1(b); and (d) the City's continuing categorical withholding of those non-video records violates the Alabama Public Records Act.

**COUNT II - ALABAMA PUBLIC RECORDS ACT: ENFORCEMENT AND INJUNCTIVE RELIEF**
**(Ala. Code §§ 36-12-40 through 36-12-46; 28 U.S.C. § 2202)**
**Against Defendant City of Orange Beach**

54. Plaintiff incorporates paragraphs 4, 5, 10 through 16, 19 through 21, 23 through 29, and 31 through 32, together with paragraphs 48 through 53 of Count I.

55. Before commencing this action, Plaintiff submitted proper public-records requests seeking specifically identified non-video records concerning Incident No. 24090105, including CAD and dispatch records, radio-traffic records, AVL or GPS records, personnel-notification records, and custodian-identifying records. After the City instructed Plaintiff to use its online

portal, Plaintiff re-entered those same requests through the portal on September 3, 2025. The City acknowledged and acted upon the continued requests by producing a vehicle inventory list while denying or withholding the remaining categories.

56. The requested non-video records were made, received, or maintained in the transaction of City business and document routine dispatch, fleet, personnel-notification, and records-custody functions. They existed before the City opened its July 17, 2025 administrative review and were not generated through a systematic criminal investigation. The later administrative review did not transform those pre-existing administrative records into law-enforcement investigative reports or related investigative material within Ala. Code § 12-21-3.1(b).

57. Plaintiff complied with the City's request procedures and stands ready to pay any reasonable fee properly assessed. Nevertheless, the City denied and continues to withhold the requested non-video records. The continuing withholding violates Plaintiff's inspection and copying rights under Ala. Code §§ 36-12-40 and 36-12-41 and the City's response obligations under Ala. Code § 36-12-44.

58. Ala. Code § 36-12-46 does not bar enforcement of Plaintiff's requests. Plaintiff made the requests before commencing this action, and the September 3, 2025 portal submission continued those pre-suit requests at the City's direction. Plaintiff did not submit the requests to obtain litigation material in lieu of the discovery procedures applicable to this action.

59. The City's withholding remains ongoing and continues to impair Plaintiff's ability to investigate and report timely on the conduct of City officials and the use of public resources. Monetary damages cannot provide the requested access or restore the diminished news value and public-oversight value caused by continued delay. Plaintiff therefore lacks an adequate remedy at

law, and the public interest favors enforcement of Alabama's declared policy of providing residents prompt access to public records.

60. Plaintiff seeks a final mandatory injunction directing the City, acting through its responsible public officer or officers, to permit inspection and copying of all responsive non-video records in its possession, custody, or control, including the CAD and dispatch records, radio-traffic records, AVL or GPS records, personnel-notification records, and custodian-identifying records, subject only to redactions or withholding expressly authorized by applicable law, within a reasonable period established by the Court. Plaintiff further requests that the Court retain jurisdiction to enforce the injunction and grant any further necessary or proper relief under 28 U.S.C. § 2202.

**COUNT III - 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION AND VIEWPOINT DISCRIMINATION - MUNICIPAL LIABILITY**
**Against Defendant City of Orange Beach**

61. Plaintiff incorporates paragraphs 4, 5, 11, 13 through 16, 18 through 39, 44, 46, and 47 only.

62. Plaintiff engaged in protected First Amendment activity by requesting public records, reporting on City government and policing, criticizing City officials, petitioning for governmental action, commenting in interactive spaces used for official City communications, and pursuing this litigation.

63. The City knew of Plaintiff's protected activity and took adverse action against her by denying and continuing to withhold requested records because of her reporting, criticism, petitioning, and litigation, and by excluding or restricting her participation in the interactive spaces of Mayor Kennon's official social-media page because of her protected activity and viewpoint. Those actions would likely deter a person of ordinary firmness from continuing to engage in protected activity.

64. Plaintiff does not allege that the First Amendment independently requires public disclosure of the body-worn camera footage. The City may apply lawful disclosure restrictions neutrally. It may not use its public-records procedures, asserted exemptions, or control over official communication channels to punish a citizen for criticizing City officials, seeking governmental accountability, or pursuing litigation. The constitutional injury alleged in this Count is the City's retaliatory and viewpoint-based use of governmental authority, not the mere nondisclosure of a record.

65. The retaliatory motive and causal connection are supported by the sequence and circumstances of the City's conduct, including Plaintiff's criticism and requests concerning Mayor Kennon; the City's opening of an administrative review only after Plaintiff requested the records; the personal benefit the withholding provided to the official whose conduct was recorded; the City's categorical treatment of materially different categories of records; the City's selective provision of access to the footage to Council members and, on information and belief, at least one member of the press; Kennon's exclusion of Plaintiff from his official social-media page; and the City's continued withholding after Plaintiff's criticism, demands, and litigation.

66. The municipal policy or practice relevant to this Count is not the City's lawful authority to withhold records that are actually exempt. It is the City's policy or settled practice of using categorical investigative classifications, public-records procedures, and control over official communication channels selectively and retaliatorily to burden or exclude a known critic while permitting access or participation by persons whose involvement or viewpoints the City favors. The City applied and maintained that policy or practice through its written responses, its continuing refusal to produce the requested records, and its administration of the Mayor's official social-media page.

67. Alternatively, the retaliatory records decision constituted municipal policy because Mayor Kennon personally directed the challenged action as a final policymaker in the relevant area. Under Ala. Code § 11-43-81 and the City's established allocation of executive authority and practice, Kennon exercised supervisory and policymaking authority over the executive implementation of City records decisions involving the Police Department, the City Clerk, and records concerning his own conduct. On information and belief, Kennon personally directed the City Clerk and Police Department to withhold the requested records, to characterize them as investigative material, and to maintain that position in response to Plaintiff's requests. No City officer or administrative body meaningfully reviewed or reversed his direction.

68. Kennon also acted as the City's final policymaker concerning the administration of his official mayoral social-media page. He used the page to make official announcements, communicate policy positions, solicit public participation, and conduct City business. Kennon possessed exclusive and unreviewable authority to control access to the page and its interactive spaces, including the authority to block users and delete or restrict comments. No other City official reviewed or reversed those decisions. Kennon's viewpoint-based blocking and restriction of Plaintiff therefore constituted municipal action and policy in the particular area of official mayoral communications.

69. The City's policy or settled practice and Kennon's final-policymaker decisions were the moving force behind the deprivation of Plaintiff's First Amendment rights and directly caused Plaintiff's exclusion, loss of access, interference with her reporting and petitioning, and other compensable injuries.

1. Plaintiff seeks nominal and compensatory damages against the City, declaratory and prospective injunctive relief limited to prohibiting records denials or restrictions on official social-media participation undertaken because of protected activity or viewpoint, costs, reasonable attorney's fees under 42 U.S.C. § 1988, and all other relief permitted by law.

**COUNT IV - 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION AND VIEWPOINT DISCRIMINATION**
**Against Defendant Tony Kennon in His Individual Capacity**

2. Plaintiff incorporates paragraphs 4, 6, 11, 18, 33, and 44 only.

3. Kennon acted under color of state law when administering the mayoral social-media page and its interactive spaces. Under Ala. Code § 11-43-81 and established City practice and usage, Kennon possessed actual authority to speak on behalf of the City concerning executive affairs, City policies, public safety, governmental operations, and other matters within the Mayor's responsibilities. Kennon purported to exercise that authority through the page by making official announcements and policy statements, communicating with residents about City business, and soliciting public input.

4. Kennon exercised personal control over access to and participation in the page's interactive spaces, including the ability to block users and delete or restrict comments. His decisions to block Plaintiff and restrict her comments were personal actions taken through the governmental authority and account-control functions he exercised as Mayor.

5. Plaintiff engaged in protected First Amendment activity by reporting on City government and policing, criticizing Kennon and other City officials, requesting public records, commenting about matters of public concern, petitioning the City for redress, and pursuing governmental accountability. Kennon knew of Plaintiff's protected activity and her critical viewpoint.

6. By opening the page's interactive spaces for public comments and participation concerning City business, Kennon created at least a limited public forum for discussion of the subjects addressed. Kennon could enforce reasonable and viewpoint-neutral participation rules, but he could not exclude Plaintiff because she criticized him, disagreed with City policy, requested public records, or expressed a disfavored viewpoint.

7. After and because of Plaintiff's protected activity and viewpoint, Kennon blocked Plaintiff from the page and deleted or restricted her critical comments. The restrictions were not imposed for violation of a neutral participation rule. They were imposed because Plaintiff's comments and reporting criticized Kennon and sought public accountability. But for Plaintiff's protected activity and viewpoint, Kennon would not have blocked her or restricted her participation.

8. Kennon's conduct directly prevented Plaintiff from participating in interactive discussions concerning City business and would likely deter a person of ordinary firmness from continuing to criticize City officials, request public records, petition the government, or participate in official public discussions. The adverse effect need not be great, and Plaintiff's continued willingness to speak does not eliminate the constitutional injury.

9. On July 11, 2025, Plaintiff sent a written demand notifying Kennon and the City Attorney of the block and demanding restoration of access. Access was restored only after that demand. The later restoration of access does not eliminate the completed constitutional violation or Plaintiff's claim for nominal damages.

10. Plaintiff seeks nominal and compensatory damages against Kennon in his individual capacity, punitive damages where permitted by law, costs, reasonable attorney's fees under 42 U.S.C. § 1988, and all other relief permitted by law.

**COUNT V - 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION AND VIEWPOINT DISCRIMINATION**
**Against Defendant Jack Robertson in His Individual Capacity and, Alternatively and Solely for Prospective Relief, in His Official Capacity**

11. Plaintiff incorporates paragraphs 7, 11, 33, 37 through 43, and 45 through 47 only.

12. Plaintiff engaged in protected First Amendment activity by requesting public records, reporting and commenting on City government, criticizing City officials, petitioning the government, pursuing this litigation, and seeking to respond publicly to Robertson's statements concerning Plaintiff, the litigation, and the City's handling of the body-camera footage.

13. Robertson knew of Plaintiff's protected activity and viewpoint. His June 30, 2026 post addressed Plaintiff and her statements by name, discussed the pending litigation and the disputed footage, and generated a public discussion concerning the same controversy.

14. On information and belief, under an established and settled practice and usage of the Orange Beach City Council, individual councilmembers, including Robertson, possessed actual authority to speak for the City and the Council, and to communicate with constituents and members of the news media on the City's or Council's behalf, concerning Council business, Council actions, pending City litigation, the Council's access to and review of City records, and advice or direction received from the City Attorney. That authority arose from the Council's own practice of conducting and publicizing its business through individual members acting on their official City channels, without any requirement of prior authorization, and the City did not disavow, countermand, or treat as unauthorized the councilmember communications made in that manner. Consistent with and in the exercise of that authority, on June 18, 2026, Robertson used his City-issued orangebeachal.gov email address, a governmental channel maintained for the conduct of City business, to provide a member of the news media with official commentary concerning the ethics complaints against Mayor Kennon, the conduct of other councilmembers, the pending

litigation, the Council's handling of the body-camera footage, and what Robertson represented to be in the City's best interests. The City permitted and treated that communication as an authorized councilmember statement, and no City officer disavowed or countermanded it, reflecting that Robertson in fact possessed actual authority to speak on the City's and the Council's behalf concerning these governmental matters.

15. Robertson purported to exercise that authority in the June 30, 2026 post. He addressed the Council's access to and knowledge of the disputed footage, stated that the matter was proceeding through the courts and that there was nothing "we" could do, invoked advice or direction from "our attorney," and represented what the Council could and could not do concerning the footage and the pending dispute. The content and function of the post presented Robertson as communicating with constituents about matters within his Council responsibilities, rather than speaking solely as a private citizen.

16. Robertson opened the interactive space accompanying the June 30 post for public comment. Plaintiff and other members of the public participated before Robertson imposed the restriction, and Robertson continued permitting and interacting with comments supporting his position or expressing hostility toward Plaintiff. The interactive space was therefore a public forum, or at least a limited public forum, for discussion of the subjects addressed in the post.

17. Robertson could enforce reasonable and viewpoint-neutral rules governing that interactive space. He could not use his control over the account to exclude Plaintiff because she criticized him, the Council, the City, or the City's handling of the footage while permitting speakers expressing favorable or hostile-to-Plaintiff viewpoints to remain.

18. After Plaintiff criticized Robertson's statements and attempted to respond concerning the pending litigation and the Council's handling of the footage, Robertson imposed and maintained a post-specific comment restriction that excluded Plaintiff while permitting persons hostile to Plaintiff to continue commenting. Robertson also imposed a page-wide block that, for a period of time, prevented Plaintiff from accessing the account through her Facebook account, viewing its public-facing content, participating in discussions, or responding to Robertson's statements concerning her. The page-wide block has since ended; its removal date and circumstances are not presently known to Plaintiff and will be established in discovery.

19. Robertson's selective restriction and blocking of Plaintiff, while speakers expressing opposing viewpoints remained able to participate, constituted intentional viewpoint discrimination. The temporal sequence, Robertson's knowledge of Plaintiff's viewpoint, his authorship of the post addressing Plaintiff and her statements by name, his selective retention of speakers hostile to Plaintiff, and his personal endorsement of hostile comments through the "liked by Author" markers support the reasonable inference that Plaintiff's viewpoint caused the restriction and block.

20. Robertson imposed the restriction and block because of Plaintiff's prior protected reporting, criticism, public-records requests, petitioning, and litigation. But for Plaintiff's protected activity and critical viewpoint, Robertson would not have excluded her from the post or blocked her from the account.

21. The restriction and block directly prevented Plaintiff from speaking and receiving information in the affected interactive spaces while they were in effect, and would likely deter a person of ordinary firmness from continuing to engage in protected activity. Plaintiff's continued

reporting and criticism do not eliminate the constitutional injury or make Robertson's exclusion constitutionally insignificant.

22. The page-wide block has since ended; its removal date and circumstances are not presently known to Plaintiff and will be established in discovery. Robertson has not disavowed his authority to reimpose a comparable restriction, and Plaintiff continues to wish to view and participate in Robertson's posts and interactive spaces concerning Council business without renewed viewpoint-based exclusion.

23. On information and belief, the City's settled practice and usage delegated to Robertson final and unreviewable authority over access to and moderation of the interactive spaces accompanying the Council-related communications he made through the account. No other City officer reviewed or reversed Robertson's restriction and blocking decisions, and Robertson presently possesses the exclusive authority to impose or remove such restrictions. To the extent Robertson exercised that delegated authority under color of state law, his continuing authority over the account constitutes municipal policy in that limited area and supports prospective relief against him in his official capacity.

24. Plaintiff seeks nominal and compensatory damages against Robertson in his individual capacity, punitive damages against Robertson in his individual capacity where legally available, costs, and reasonable attorney's fees under 42 U.S.C. § 1988. Plaintiff also seeks prospective declaratory and injunctive relief against Robertson, alternatively and solely in his official capacity, prohibiting renewed viewpoint-based exclusion from posts and interactive spaces in which Robertson acts under color of state law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

(a) A declaration, as against the City of Orange Beach, granting the declaratory relief requested in Count I, namely that (i) Plaintiff's July 2025 requests and the City-directed continuation of those requests through the portal are not barred by Ala. Code § 36-12-46; (ii) the requested CAD event and dispatch records, radio-traffic records, AVL or GPS logs, personnel-notification records, and custodian-identifying records are public records under Ala. Code § 36-12-40, subject only to particularized redactions expressly authorized by applicable law; (iii) the City's July 17, 2025 administrative review was not a law-enforcement criminal investigation and did not bring those records within Ala. Code § 12-21-3.1(b); and (iv) the City's continuing categorical withholding of those non-video records violates the Alabama Public Records Act;

(b) A declaration that Defendants' withholding of records, and their restriction of Plaintiff's participation on official social-media accounts, undertaken because of Plaintiff's protected activity or viewpoint, violated the First Amendment as incorporated through the Fourteenth Amendment;

(c) An order, as against the City of Orange Beach, directing its responsible public officers to permit inspection and copying of the responsive CAD and dispatch records, radio-traffic records, AVL or GPS records, personnel-notification records, and custodian-identifying records, subject only to redactions or withholding

expressly authorized by applicable law, within a reasonable period established by the Court;

(d) An injunction, as against Defendant Robertson, alternatively and solely in his official capacity, prohibiting renewed viewpoint-based restriction of Plaintiff's participation in the posts and interactive spaces in which he acts under color of state law;

(e) Nominal and compensatory damages as permitted by law, and punitive damages against the individual Defendants in their individual capacities where legally available;

(f) Costs and reasonable attorney's fees under 42 U.S.C. § 1988; and

(g) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Dennis D. Green, Jr.
DENNIS D. GREEN, JR., ESQ. (GRE154)
Alabama Bar No. 7616U22C
LAW OFFICE OF DENNIS GREEN
P.O. Box 146
Gulf Breeze, FL 32562
Phone: (850) 436-3559
Email: dennis@lawofficeofdennisgreen.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including Andrew J. Rutens and Melissa P. Hunter, Galloway, Wettermark & Rutens, LLP, Post Office Box 16629, Mobile, Alabama 36616-0629, and that Defendant Jack Robertson, who has not yet appeared, will be served with a summons and a copy of this pleading in accordance with Federal Rule of Civil Procedure 4.

/s/ Dennis D. Green, Jr.
DENNIS D. GREEN, JR., ESQ. (GRE154)
Alabama Bar No. 7616U22C
LAW OFFICE OF DENNIS GREEN
P.O. Box 146
Gulf Breeze, FL 32562
Phone: (850) 436-3559
Email: dennis@lawofficeofdennisgreen.com

*Attorney for Plaintiff*